1

CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Dennis Price, Esq., SBN 279082
Amanda Seabock, Esq., SBN 289900
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, <br><br> Plaintiff, <br><br> v. <br><br> **Antonio J. Gatto**, in individual and representative capacity as trustee UTAD December 17, 1992; **August R. Gatto II**, in individual and representative capacity as trustee UTAD December 17, 1992; **El Sol Market, Inc.**, a California Corporation; and Does 1-10, <br><br> Defendants. | **Case No.** <br><br> **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Scott Johnson complains of Antonio J. Gatto, in individual and representative capacity as trustee UTAD December 17, 1992; August R. Gatto II, in individual and representative capacity as trustee UTAD December 17, 1992; El Sol Market, Inc., a California Corporation; and Does 1-10 ("Defendants"), and alleges as follows:

1

**PARTIES:**

1.   Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

2.   Defendant Antonio J. Gatto, in individual and representative capacity as trustee UTAD December 17, 1992, owned the real property located at or about 705 N. 13th Street, San Jose, California, in September 2018.

3.   Defendant August R. Gatto II, in individual and representative capacity as trustee UTAD December 17, 1992, owned the real property located at or about 705 N. 13th Street, San Jose, California, in September 2018.

4.   Defendant Antonio J. Gatto, in individual and representative capacity as trustee UTAD December 17, 1992, owned the real property located at or about 705 N. 13th Street, San Jose, California, in October 2018.

5.   Defendant August R. Gatto II, in individual and representative capacity as trustee UTAD December 17, 1992, owned the real property located at or about 705 N. 13th Street, San Jose, California, in October 2018.

6.   Defendant Antonio J. Gatto, in individual and representative capacity as trustee UTAD December 17, 1992, owned the real property located at or about 705 N. 13th Street, San Jose, California, in December 2018.

7.   Defendant August R. Gatto II, in individual and representative capacity as trustee UTAD December 17, 1992, owned the real property located at or about 705 N. 13th Street, San Jose, California, in December 2018.

8.   Defendant Antonio J. Gatto, in individual and representative capacity as trustee UTAD December 17, 1992, owns the real property located at or about 705 N. 13th Street, San Jose, California, currently.

9.   Defendant August R. Gatto II, in individual and representative capacity as trustee UTAD December 17, 1992, owns the real property located at or

Complaint

about 705 N. 13th Street, San Jose, California, currently.

10. Defendant El Sol Market, Inc. owned El Sol Market located at or about 705 N. 13th Street, San Jose, California, in September 2018.

11. Defendant El Sol Market, Inc. owned El Sol Market located at or about 705 N. 13th Street, San Jose, California, in October 2018.

12. Defendant El Sol Market, Inc. owned El Sol Market located at or about 705 N. 13th Street, San Jose, California, in December 2018.

13. Defendant El Sol Market, Inc. owns El Sol Market ("Market") located at or about 705 N. 13th Street, San Jose, California, currently.

14. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

15. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

16. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

Complaint

17. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

18. Plaintiff went to the Market in September 2018, October 2018 and December 2018 went with the intention to avail himself of its goods or services, motivated in part to determine if the defendants comply with the disability access laws.

19. The Market is a facility open to the public, a place of public accommodation, and a business establishment.

20. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Market.

21. Unfortunately, although parking spaces were one of the facilities specifically reserved for patrons, there were no compliant, accessible handicap parking spaces available for persons with disabilities that complied with the Americans with Disability Act Accessibility Guidelines during plaintiff's visits.

22. Instead, there was just a single parking stall in the parking lot that had a faded International Symbol of Accessibility (ISA) logo in it. Next to the parking stall with the logo, there were white diagonal lines that did not have a "NO PARKING" warning in it. And there was no blue paint surrounding the parking stall or access aisle.

23. Not surprisingly, other vehicles routinely park in the old access aisle.

24. Additionally, during plaintiff's visits to the subject property in September 2018 and October 2018, cars parked in the designated parking stall marked and reserved for persons with disabilities. The cars did not have disability placard, license plate or tag.

25. In January 2019, when an investigator went to the property to capture

Complaint

images and get various measurements, the investigator saw that cars were parked in the designated parking stall and access aisle ostensibly designed for persons with disabilities. The cars did not have disability placards, disability license plates or tags.

26. The defendants have no policy of prohibiting ambulatory persons, who have no right to use the parking stall designed for persons with disabilities, from using the parking stall.

27. Finally, the parking stall and access aisle designed and reserved for persons who drive vans were not level with each other. The access aisle had slopes greater than 2.1%.

28. Paths of travel are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Market.

29. Although there were shelves and merchandise aisles open to customers for shopping, the paths of travel in and throughout these merchandise aisles were not accessible because the defendants had a practice of placing merchandise and merchandise display on the route of travel, which restricted passage to less than 36 inches in width.

30. In fact, the narrowest path of travel was about 24 inches wide. This is not accessible for plaintiff.

31. Currently, although there are shelves and merchandise aisles open to customers for shopping, paths of travel in and throughout these merchandise aisles are not accessible to wheelchair users because the defendants have a practice of placing merchandise and merchandise display on the route of travel, which restricts passage to less than 36 inches in width.

32. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

33. Plaintiff personally encountered these barriers.

5

Complaint

34. This inaccessible facility denied the plaintiff full and equal access and caused him difficulty.

35. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

36. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

37. For example, there are numerous paint/stripe companies that will come and stripe a parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

38. Plaintiff will return to the Market to avail himself of its goods or services and to determine compliance with the disability access laws. He is currently deterred from doing so because of his knowledge of the existing barriers. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again.

39. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his

Complaint

disability removed regardless of whether he personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

40. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

41. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and

7

Complaint

1     the bathrooms, telephones, and drinking fountains serving the

2     altered area, are readily accessible to and usable by individuals

3     with disabilities. 42 U.S.C. § 12183(a)(2).

4     42. Any business that provides parking spaces must provide accessible

5 parking spaces. 2010 Standards § 208. To qualify as a reserved handicap

6 parking space, the space must be properly marked and designated. Under the

7 ADA, the method, color of marking, and length of the parking space are to be

8 addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, §

9 502.3.3. Under the California Building Code, to properly and effectively

10 reserve a parking space for persons with disabilities, each parking space must

11 be at least 216 inches in length. CBC § 11B-502.2 Under the California

12 Building Code, to properly and effectively reserve a parking space for persons

13 with disabilities, each such space must be identified with a reflectorized sign

14 permanently posted adjacent to and visible from each stall or space. CBC §

15 1129B.4. The sign must consist of the International Symbol of Accessibility

16 (♿) in white on a blue background. Id. It cannot be smaller than 70 square

17 inches and must be mounted so that there is a minimum of 80 inches from the

18 bottom of the sign to the parking space. Id. Signs must be posted so that they

19 cannot be obscured by a vehicle parking in the space. Id. An additional sign or

20 additional language below the symbol of accessibility must state, "Minimum

21 Fine $250" to ensure that the space remains available for persons with

22 disabilities. Id. Another sign must be posted in a conspicuous place at the

23 entrance to the parking lot or immediately adjacent to each handicap parking

24 space, with lettering 1 inch in height, that clearly and conspicuously warn that

25 unauthorized vehicles parking in the handicap parking spaces can be towed at

26 the owner's expense. Id. Additionally, the surface of the handicap parking stall

27 must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36

28 inches. Id. And the surface of the access aisle must have a blue border. CBC §

Complaint

1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. Id.

43. Here, there was a faded International Symbol of Accessibility logo in the parking space. And there were white diagonal lines that did not have a "NO PARKING" warning in the area adjacent to the parking stall ostensibly designed for persons with disabilities. There was also no blue striping that outlined a parking stall and access aisle for persons with disabilities.

44. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory.

45. Here, the failure to provide level parking is a violation of the law.

46. The minimum clear width of an accessible route shall be 36 inches. 2010 Standards § 403.5.1.

47. Here, the failure to provide accessible paths of travel inside the Market is a violation of the ADA.

48. The Safe Harbor provisions of the 2010 Standards are not applicable here because the conditions challenged in this lawsuit do not comply with the 1991 Standards.

49. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

50. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

Complaint

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

51. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.  The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California.  Cal. Civ. Code §51(b).

52. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act.  Cal. Civ. Code, § 51(f).

53. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

54. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

55. Although the plaintiff was markedly frustrated by facing discriminatory barriers, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest physical personal injury greater than the amount of the statutory damages.

Complaint

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: January 10, 2019          CENTER FOR DISABILITY ACCESS

By: _____
                     Chris Carson, Esq.
                     Attorney for plaintiff

---

11

Complaint